UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

NOT FOR PUBLICATION

| | |
|---|---|
| JAMES T. GENGO, individually and on behalf of all others similarly situated, | Civil Action No. 18-8012 (SRC) |
| Plaintiff(s), | |
| v. | OPINION |
| JETS STADIUM DEVELOPMENT, LLC and NEW YORK JETS LLC, | |
| Defendants. | |

**CHESLER**, District Judge

This matter comes before the Court upon the filing by Jets Stadium Development, LLC and New York Jets LLC (collectively, "Defendants") of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Docket No. 10. Plaintiff James T. Gengo ("Plaintiff") opposes this motion (Docket No. 18, "Pl. Br."), and Defendants have filed a reply brief. Docket No. 19. The Court has reviewed the parties' submissions and proceeds to rule without oral argument. See Fed. R. Civ. P. 78(b). For the reasons set forth below, Defendants' motion is granted and this Court will dismiss both claims in the complaint with prejudice.

I. BACKGROUND[1]

This case concerns whether Defendants violated New Jersey state law by publicly selling season tickets for New York Jets home games in the 200-level mezzanine of Metlife Stadium to

---

[1] The following recitation is largely based on the well-pleaded factual allegations in the complaint, which are assumed to be true for the purposes of resolving this motion. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1940–41 (2009) ("When there are well-pleaded factual allegations, a

1

individuals who do not hold a Personal Seat License ("PSL").  See Docket No. 1, Ex. A ("Compl."). While not pleading breach of contract, Plaintiff alleges that Defendants' conduct breaches the implied covenant of good faith and fair dealing as well as the New Jersey Consumer Fraud Act ("CFA"). Plaintiff seeks class certification on behalf of similarly-situated 200-level PSL holders. Compl. ¶¶ 1, 45-58.

      a. The Personal Seat License

Defendant New York Jets LLC ("Jets LLC") owns and operates the New York Jets football team (the "Jets") (Compl. ¶ 11), while Defendant Jets Stadium Development, LLC ("JSD") is an entity formed in 2005 to own, operate, and develop a new home stadium for the Jets. Id. ¶ 12. JSD owns a 50% interest in the New Meadowlands Stadium Company LLC, which owns and operates the new stadium—called MetLife Stadium, in East Rutherford, New Jersey—where the Jets now play their home games. Id. ¶ 14.

In 2010, Defendants enforced a policy that required the purchase of a PSL as a pre-condition for buying season tickets in certain sections of the Stadium, including for 200-level seats. Id. ¶ 16. As a licensing agreement, the PSL provides licensee fans with the guaranteed right to purchase season tickets for specific seats in exchange for a fee, which was $4,000 per seat in 2010. Id. ¶¶ 17, 19. Plaintiff entered a contract with JSD to purchase a PSL (the "PSL Agreement"), and pursuant to this contract Plaintiff subsequently bought Jets season tickets from Jets LLC. Id. ¶ 25. From 2010 to 2018, Plaintiff continued to purchase Jets season tickets. In January 2018, Jets LLC informed Plaintiff that it would no longer require the purchase of the PSL prior to buying season tickets for other 200-level seats at the Stadium. Id. ¶¶ 27-28.

---

court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.").

b.  Terms of the PSL Agreement

The PSL Agreement comprises a two-page seat confirmation and a three-page contract with various terms and conditions. Docket No. 10, Ex. A ("PSL Agrmt"). On the signature page, the contract notes that "By signing this Confirmation, Licensee affirmatively has accepted the terms and conditions of the Confirmation and the PSL Agreement, making such agreement valid, binding and fully enforceable." PSL Agrmt. 2. The PSL Agreement is subject to a New Jersey choice-of-law provision. PSL Agrmt. § 11(d).

The PSL provides Plaintiff the right to buy season tickets for two 200-level seats, specifically for Mezzanine Endzone A, Section 245a, Row 5, seats 3 and 4. See PSL Agrmt. 1, § 5(a) ("Licensee (i) shall have the right and the obligation to purchase admission tickets for the Seats for all pre-season and regular season home games of the Jets . . ."). Plaintiff's right to purchase season tickets for these two specific seats continues, pursuant to the PSL, "for as long as the Jets play home games at the Stadium and at prices and in a manner established by JSD, the Jets or, if applicable, the National Football League." Id. The Agreement does not refer to Plaintiff receiving any "exclusive rights," nor does it refer to limitations, covenants, or representations about the manner in which Defendants may sell season tickets for other seats in the Stadium. Id. (passim).

The Agreement features numerous disclaimers regarding the future value and sale of the PSL, including that:

> § 7(b) Licensee is not acquiring this PSL as an investment and has no expectation of profit as the licensee of this PSL;
>
> § 7(c) Licensee is acquiring this PSL for its own use and not with a view to the distribution or resale of this PSL or any tickets acquired pursuant to this PSL;
>
> § 7(g) Licensee acknowledges that, although this PSL is transferable subject to the provisions of this PSL Agreement and the Transfer Procedures, JSD has not

3

represented and does not guarantee that there is or ever will be a market for the resale of this PSL.

§ 7(h) in accepting this PSL Agreement and agreeing to its terms and conditions, Licensee has not relied on any representations, warranties, or other statements of any kind made by or on behalf of JSD, the Jets, or any of their respective members, owners, officers, employees, agents, representatives or affiliates, except as expressly stated in this PSL Agreement.

The Agreement also contains an express merger and integration clause, providing that:

This PSL Agreement contains the entire agreement of the parties with respect to the matters provided for herein, and supersedes any written or oral agreement, instrument, application, promotional material, brochure, website information, or other representation previously made, distributed or entered by or on behalf of them or their respective affiliates with respect to those matters. **JSD HAS NOT MADE, AND LICENSEE ACKNOWLEDGES THAT IT HAS NOT RELIED ON, ANY REPRESENTATIONS ABOUT THE TERMS OF THIS PSL AGREEMENT, EXCEPT AS EXPRESSLY SET FORTH IN THIS PSL AGREEMENT**. No amendment or modification to this PSL Agreement shall be effective unless the amendment or modification is in writing and signed by both JSD and Licensee.

PSL Agrmt. § 11(e) (emphasis in original). In addition to the terms and conditions contained in the five-page Agreement, the Complaint also refers to "Defendants' marketing materials" published on the NewYorkJets.com website. Compl. ¶ 20. Under the header 'Tickets & Stadium FAQ,' the website states that the "PSLs are good for as long as the Jets play in the new building in its current configuration." Id.; see also Docket No. 10, Ex. B (screen print-out of entire webpage). The website specifically disclaims, however, that its content is "for informational purposes only," and the "The Terms and conditions of each PSL will be set forth in the Personal Seat License Agreement . . . that each purchaser must read and accept to obtain a PSL." Docket No. 10, Ex. B.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires complaints to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." This Rule does not require "detailed factual allegations," but it demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 677-78 (2009). To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. at 678 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  The complaint is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (quoting Twombly, 550 U.S. at 556). This facial plausibility requirement is not satisfied by allegations that are "merely consistent with a defendant's liability or show the mere possibility of misconduct." Santiago v. Warminster Twp., 629 F.3d 121, 133 (3d Cir. 2010); see also Hill v. Commerce Bancorp, Inc., 2011 WL 13146435, at *3 (D.N.J. Feb. 28, 2011) ("'[P]ossibility' is no longer the touchstone for pleading sufficiency after Twombly and Iqbal. Plausibility is what matters."). Determining facial plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009) (quoting Iqbal, 550 U.S. at 679).

To address a motion to dismiss under Rule 12(b)(6), courts in the Third Circuit conduct a two-part analysis. "First, the factual and legal elements of a claim should be separated." Fowler, 578 F.3d at 210. Courts are "required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable" to the nonmoving party. OFI Asset Mgmt. v. Cooper Tire & Rubber, 834 F.3d 481, 489 (3d Cir.

2016) (quoting Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007)). While factual allegations must be accepted as true, courts should "not credit either 'bald assertions' or 'legal conclusions' in a complaint." Barella, 489 F.3d at 177; see also James v. City of Wilkes-Barre, 700 F.3d 675, 679 (3d Cir. 2012) (in deciding Rule 12(b)(6) motions, federal courts should "disregard rote recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements"). When assessing such factual allegations, courts may consider not only the complaint, but also documents attached thereto or specifically referenced therein and matters of public record. Pittsburgh v. W. Penn Power Co., 147 F.3d 256, 259 (3d Cir. 1998).  After the factual and legal elements have been separated, the court must "then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" Fowler, 578 F.3d at 210–11.

### III. DISCUSSION

In the complaint, Plaintiff alleges that he purchased the PSL "based on Defendants' representations, express and/or implied, that doing so would give [him] an exclusive right; namely, the right to purchase season tickets for 200-level seats" (Compl. ¶ 2), and that Defendants' decision to sell 200-level seats to the general public without requiring separate purchase of a PSL has "rendered the PSLs entirely or substantially worthless." Id. ¶ 4. Plaintiff alleges that such conduct violates the PSL Agreement's implied covenant of good faith and fair dealing (Id. ¶¶ 45-48), and further constitutes an unconscionable commercial practice in violation of the New Jersey Consumer Fraud Act. Id. ¶¶ 49-58.[2]

---

[2] The complaint asserts a third cause of action, to establish statutory eligibility for certain damages under the New Jersey Truth-in-Consumer Contract, Warranty and Notice Act, which Plaintiff has voluntarily withdrawn. See Pl. Br. 25 ("Defendants admit in their opening papers that this provision [in the PSL Agreement] 'does not purport to bar statutory damages.' DB, p. 32. Based upon this representation, Plaintiff withdraws the TCCWNA claim.").

After a thorough review of the complaint, the PSL Agreement, the 'Tickets & Stadium FAQ' webpage quoted in the complaint, as well as the applicable law, this Court is satisfied that Plaintiff has not pleaded a valid claim for relief for either breach of the implied covenant of good faith and fair dealing or for violation of the NJCFA. Accordingly, this Court will dismiss both claims with prejudice.

      **a. Plaintiff Has Not Pleaded a Valid Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing**

Under New Jersey law, every contract contains an implied covenant of good faith and fair dealing. Wilson v. Amerada Hess Corp., 168 N.J. 236, 244 (N.J. 2001). This implied covenant applies to "both the performance and enforcement of the contract." Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs., 182 N.J. 210, 224 (N.J. 2005). Although the implied covenant is as valid and effective as any express covenants in the contract, it cannot override express contractual terms (Sons of Thunder, Inc. v. Borden, Inc., 148 N.J. 396, 419 (N.J. 1997)), nor may it be "invoked to preclude a party from exercising its express rights under such an agreement." DiCarlo v. St. Mary Hosp., 530 F.3d 255, 267 (3d Cir. 2008).

The implied covenant is breached when one party exercises discretionary authority pursuant to the contract "unreasonably, or capriciously, with the objective of preventing the other party from receiving its reasonably expected fruits under the contract." Wilson, 168 N.J. at 251; see also Brunswick Hills, 182 N.J. at 226 ("A plaintiff may be entitled to relief under the covenant if its reasonable expectations are destroyed when a defendant acts with ill motives and without any legitimate purpose."). Since "parties reasonably intend their business relationship to be mutually beneficial," such conduct is "beyond the expectations of the parties at the formation of a contract" and accordingly violates implied the implied covenant. Wilson, 168 N.J. at 251.

Frequently, contracts will vest discretion in one party in the execution or performance of the contract. In such case, "an allegation of bad faith or unfair dealing should not be permitted . . . absent improper motive." Wilson, 168 N.J. at 251; Brunswick Hills, 182 N.J. at 225 ("Proof of 'bad motive or intention' is vital to an action for breach of the covenant."); Hassler v. Sovereign Bank, 644 F. Supp. 2d 509, 518 (D.N.J. 2009), aff'd, 374 F. App'x 341 (3d Cir. 2010) ("However, bad motive or intention is essential."). The party claiming breach of the implied covenant bears the burden of "provid[ing] evidence sufficient to support a conclusion that the party alleged to have acted in bad faith has engaged in some conduct that denied the benefit of the bargain originally intended by the parties." Brunswick Hills, 182 N.J. at 225. Without such "bad motive or intention, discretionary decisions that happen to result in economic disadvantage to the other party are of no legal significance." Wilson, 168 N.J. at 246; see also Hassler, 644 F.Supp. at 518 ("a plaintiff cannot satisfy the 'improper motive' element . . . by alleging, without more, that the defendant's discretionary decisions benefitted the defendant and disadvantaged the plaintiff.").

Plaintiff argues that Defendants' conduct breaches two forms of the implied covenant: for the imposition of absent terms and conditions (see Onderdonk v. Presbyterian Homes of New Jersey, 85 N.J. 171, 175 (N.J. 1981); Palisades Properties, Inc. v. Brunetti, 44 N.J. 117, 130 (N.J. 1965)); and for the unfair exercise of discretion. Plaintiff further argues that the claim is not deficient under Wilson and Brunswick Hills for lacking allegations of 'bad motive or intention' because no bad faith is required for the Onderdonk variety of implied covenant claims, and because the case at bar is at the pleading stage—unlike the summary judgment phase in Wilson—and accordingly the existence or absence of bad faith is an issue for discovery. Pl. Br. 16-18. Plaintiff's argument has numerous failings. First, the New Jersey Supreme Court decided

Onderdonk and Palisades Properties twenty-four years and forty years respectively before Brunswick Hills, in which the Court reaffirmed its requirement from Wilson that "an allegation of bad faith or unfair dealing should not be permitted to be advanced in the abstract and absent an improper motive." 182 N.J. at 231. The New Jersey Supreme Court in Brunswick Hills did not expressly limit this requirement to claims based on the unfair exercise of discretion, nor did it allude to any exemption for the Onderdonk variety of claims. Further, Plaintiff cites no post-Brunswick Hills caselaw that has held that bad motive or intention is not required for certain varieties of claims for breach of the implied covenant.  In the absence of such case law, this Court is bound to apply the black letter law announced by the New Jersey Supreme Court, which requires bad motive or intention for breach of the implied covenant. And, while Wilson was decided at the summary judgment stage, Plaintiff provides no factual allegations in support of bad faith or motive, and therefore the complaint is deficient under the Twombly and Iqbal pleading standards, and discovery is not appropriate on this issue.

Even if this Court assumed, *arguendo*, that a claim for breach of the implied covenant may proceed without allegations of bad faith or bad motive, the claim is still deficient because Plaintiff received the "reasonably expected fruits under the contract." Wilson, 168 N.J. at 251. The PSL Agreement provides the clearest indication of the parties' reasonable expectations. Id. at 250 ("Accordingly, when considering whether [Defendant] breached the implied covenant, we must respect and give effect to the parties' bargain as expressed in the contract . . . See Cruz–Mendez v. ISU/Ins. Servs., 156 N.J. 556, 570 (1999) (stating parties intent revealed by language used)"). The Agreement clearly defines its scope: in exchange for paying the licensing fee, the PSL grants Plaintiff the "right and obligation to purchase admission tickets for the Seats for all pre-season and regular season home games of the Jets scheduled to be played at the Stadium."

PSL Agrmt. § 5(a). The 'Seats' are contractually defined as Mezzanine Endzone A, Section 245a Row 5, Seats 3 and 4 of Metlife Stadium. PSL Agrmt. 1. The sale of other 200-level seats to individuals without a PSL requirement does not implicate Plaintiff's license to these two seats. So long as Plaintiff continues to satisfy the obligations set forth in the PSL—including regularly purchasing tickets for Jets pre-season and regular season home games—he will continue to have the unimpaired licensing right to purchase season tickets for these two seats. In future NFL seasons, Defendants could possibly re-introduce the PSL, at a higher or lower market price per seat than the $4,000 Plaintiff paid. Irrespective of this future conduct and the possible future market price of the PSL, Plaintiff will be entitled to the full fruit of his licensing rights to seats 3 and 4 of Mezzanine Endzone A, Section 245a, Row 5. Because Plaintiff's licensing rights continue under the new policy—irrespective of the future re-introduction and/or price of the PSL—Defendants' conduct has not, in fact, "utterly destroyed the value of Plaintiff's PSLs." Pl. Br. 2.

    Not only does the Agreement clearly specify the ambit of Plaintiff's licensing rights, other provisions in the PSL underscore how Plaintiff's argument violates the reasonable expectations of the parties at contract formation. The Agreement does not provide the licensee PSL holder with ownership, equity, or real property interest in the Stadium or in other seats (PSL Agrmt. § 5(e)), it does not grant the PSL holder any real property or leasehold interest in the Stadium or its seats (Id.), and it does not refer to the receipt of "exclusive rights." The Agreement expressly disclaims that Plaintiff is not acquiring the PSL as an investment or with a view to profiting from future distribution or resale, and further that Defendants make no representations about the future resale market of the PSL. See PSL Agrmt. §§ 7(b), (c), (d), and (g). These provisions confirm that the parties' reasonable expectations when executing the

contract was limited to the seats specifically referenced, and did not purport to extend licensing or equity rights to Plaintiff to control the ticketing policy for other 200-level mezzanine seats.

Even without reference to the unambiguous language of the PSL, Plaintiff's argument violates an objective interpretation of the parties' intentions. Defendants' interpretation accords with the clear provisions of the PSL, whereas Plaintiff seeks judicial disregard of the unambiguous contractual language as well as equitable relief enjoining Defendant from engaging in certain ticket pricing behavior with non-parties to the contract, with respect to seats that are not the subject of the contract. Plaintiff's argument may be summarized as follows: it was not his reasonable expectation upon contracting to potentially lose money in the future resale market of the PSL. The implied covenant is not breached, however, "merely because enforcement of the contract causes hardship to one of the parties." Brunswick Hills, 182 N.J. at 223. Accordingly, this Court will grant Defendant's motion and dismiss with prejudice the claim for breach of the implied covenant of good faith and fair dealing.

### b. Plaintiff Has Not Pleaded a Valid Claim for Violations of the New Jersey Consumer Fraud Act

To state a valid claim under the New Jersey Consumer Fraud Act, the plaintiff must allege "three elements: (1) unlawful conduct; (2) an ascertainable loss; and (3) a causal relationship between the defendants' unlawful conduct and the plaintiff's ascertainable loss." Int'l Union of Operating Engineers Local No. 68 Welfare Fund v. Merck & Co., 192 N.J. 372, 389 (N.J. 2007) (internal citations omitted). 'Unlawful conduct' comprises any "unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, . . ." N.J. Stat. Ann. § 56:8-2. Although the CFA does not define

'unconscionable commercial practice[s]," the New Jersey Supreme Court has clarified that "'unconscionability' is an amorphous concept obviously designed to establish a broad business ethic," and thus the term is "the standard of conduct contemplating good faith, honesty in fact and observance of fair dealing." Turf Lawnmower Repair, Inc. v. Bergen Record Corp., 139 N.J. 392, 414 (N.J. 1995) (internal citations omitted). In that regard, the "the business practice in question must be 'misleading' and stand outside the norm of reasonable business practice in that it will victimize the average consumer." Id. at 416 (emphasis added).

There are three categories of 'unlawful conduct' proscribed by the CFA: affirmative acts, knowing omissions, and regulation violations. Cox v. Sears Roebuck & Co., 138 N.J. 2, 17 (N.J. 1994). For affirmative acts, the plaintiff need not prove that the defendant intended to commit the unlawful act, however "when the alleged consumer fraud consists of an omission . . intent *is* an essential element of the fraud." Id. (emphasis in original).

For CFA claims based on written statements or contracts, the court "must make the legal determination of whether a practice can be said to be unfair in light of the written statements." Hassler, 374 F. App'x at 344. Thus, when the parties' relationship is governed by a valid contract, the defendant does not violate the CFA if the allegedly unlawful conduct is authorized by the terms of the agreement. Id. at 344 (dismissing CFA claim because contract "explicitly provided for" the defendant's actions); Rosenberg v. Wash. Mut. Bank, FA, 849 A.2d 566, 573 (N.J. App. Div. 2004) (affirming dismissal of CFA claim because bank's actions were set forth in disclosure documents).

In the case at bar, Plaintiff has failed to plead a valid claim under the CFA for three separate and independent reasons. While the Complaint alleges that "Plaintiff purchased the PSLs based on Defendants' representations, express and/or implied" (Compl. ¶ 23), Plaintiff

provides no particularized factual allegations in support of such express representations. Nor does Plaintiff allege a causal connection between such express representations and his inducement to purchase the PSL. To state a valid claim under the CFA, the misrepresentation must be "material to the transaction and . . . made to induce the buyer to make the purchase." Gennari v. Weichert Co. Realtors, 288 N.J. Super. 504, 535 (N.J. App. Div. 1996), aff'd as modified, 148 N.J. 582 (N.J. 1997). Without such factual allegations, Plaintiff does not satisfy the Rule 8 pleading standards for a CFA claim. To the extent that Defendants' alleged representations consist of implied or omitted statements, Plaintiff has additionally failed to support this claim with factual allegations that Defendants intended to knowingly defraud or deceive Plaintiff, as required by the CFA. See MZL Capital Holdings, Inc v. TD Bank, N.A., 2018 WL 2111078, at *2 (3d Cir. May 8, 2018) ("Without any particularized factual allegations suggesting that [Defendant] intended to deceive consumers, we conclude that [Defendant's] alleged conduct does not 'stand outside the norm of reasonable business practices' or 'victimize the average consumer' in any way.").

Further, as in Hassler, the parties' relationship is governed by a written contract whose clear and unambiguous terms Defendants have not violated. The PSL grants Plaintiff the right and obligation to purchase Jets season tickets for two seats in Mezzanine Endzone A, Section 245 in exchange for paying a licensing fee. Defendants' ticket sales policy in other sections of the stadium does not impair, impede, or in any way implicate—in past, present, or future NFL seasons—the license Plaintiff holds for his two seats. So long as Plaintiff satisfies the licensing criteria and continues to purchase season tickets, he will retain this right to purchase season tickets for Jets home games for his two seats, irrespective of the market value of his PSL and the manner in which Defendants sell other seats in Metlife Stadium.

Finally, the CFA proscribes unlawful practices committed "in connection with the sale or advertisement of any merchandise or real estate." N.J. Stat. Ann. § 56:8-2. By its terms, the misconduct must occur in connection with the sale itself, and not occur as a separate violation subsequent to contract formation. See State Farm Fire & Cas. Co. v. ADT Sec. Servs., Inc., 2010 WL 2998412, at *3 (D.N.J. July 21, 2010) ("It appears that New Jersey law requires, at a minimum, some tie between the NJCFA violation and the formation of the contract."); Court Plaza Assocs. v. Wausau Tile, Inc., 2015 WL 7783256, at *3 (N.J. App. Div. Dec. 4, 2015) ("To constitute a CFA violation, the misrepresentation must be made at the time of or prior to formation of the contract to induce the creation of the contract."). Plaintiff alleges, however, that Defendants changed their PSL policy subsequent to executing the Agreement. Compl. ¶ 26 ("[A]t some point after Plaintiff entered into the PSL Agreement, Defendants elected to do away with the PSL requirement for 200-level seats."). This change in policy, affecting the net price at which individuals may purchase Jets season tickets, does not alone constitute a CFA violation. Silver v. Pep Boys-Manny, Moe & Jack of Delaware, Inc., 2018 WL 1535285, at *5 (D.N.J. Mar. 29, 2018) ("Plaintiff has pointed to no authority, and there is in fact no law, which requires Defendant to charge the same prices for products, sold through different distribution channels, at different times, in the absence of some specific representation promising to do so.").[3]

For the forgoing reasons, there are several independent bases for which Plaintiff fails to plead a valid claim for violation of the CFA, and this Court will accordingly dismiss the claim with prejudice.

---

[3] The change in PSL policy is strongly suggestive of a depreciation in the value of the PSL. The fluctuations in the potential PSL resale value in 2018 do not, however, address Defendants' alleged unlawful practices during contract formation in 2010.

## IV. CONCLUSION

For the forgoing reasons, this Court will dismiss, with prejudice, both the claim for breach of the implied covenant of good faith and fair dealing as well as the claim for violation of the New Jersey Consumer Fraud Act, and will order the Clerk of the Court to mark this case as closed. An appropriate Order will follow.

    /s Stanley R. Chesler
STANLEY R. CHESLER
United States District Judge

Date: August 30, 2018